IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| S&R CONSTRUCTION CO., INC. | ) | Case No. 09-70710 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM DECISION

The matters before the Court are the United States Trustee's Objection to Commission Sought by Trustee Robert E. Wick, Jr. (the "Objection to Commission") and Objection to the Trustee's Final Report (the "Objection to the Final Report"). For the reasons stated below, the Court will sustain both Objections but will approve compensation to Mr. Wick, subject to the proper completion of his duties in this case, in the reduced amount of $3,000 plus reimbursement of expenses of $255.97.

FINDINGS OF FACT

S&R Construction Co., Inc. ("S&R") filed this voluntary Chapter 7 petition on March 25, 2009. Robert E. Wick, Jr. was appointed by the United States Trustee to serve as the Chapter 7 Trustee in this case.

At the time of filing, a lawsuit was pending in the Circuit Court for Smyth County between Harold Roland as the plaintiff and Larry Stevenson, Sue Stevenson and the Debtor as defendants (the "Shareholder Derivative Suit"). The nature of the lawsuit was a derivative shareholder's action in which Mr. Roland brought suit on behalf of the corporation to recover money from the Stevensons. The Shareholder Derivative Suit was not listed in S&R's schedules, however, its existence was disclosed in the Statement of Financial Affairs.

On February 9, 2010, Mr. Wick moved to employ counsel in connection with separate litigation pending in the Circuit Court for Smyth Country, *S&R Construction, Inc. v. Jones Realty and Construction* ("Jones Realty Litigation"). That lawsuit was listed in Schedule B as having a value of $155,000 and was also noted in the Statement of Financial Affairs. There is no indication that Mr. Wick took any action with regard to the Shareholder Derivative Suit.

On June 2, 2011, more than two years after the filing of the bankruptcy petition, Mr. Roland filed a Motion to Compel Abandonment of the Shareholder's Derivative Suit, which was noticed for hearing on June 15, 2011. Mr. Wick did not respond to the motion or appear at the hearing. The Court issued an Order on June 28, 2011 conditionally granting the motion, subject to the filing of any objection within 14 days. S&R filed an Objection to the Abandonment of the Shareholder Derivative Litigation on July 11, 2011, noting that Larry Stevenson advised S&R that he was offering $10,000 to the trustee to settle the claim in full. The certificate of service reflects that the Objection was served on Mr. Wick. Mr. Wick did not appear at the continued hearing on this matter and, in response to questions raised by the Court at the hearing, counsel for Mr. Roland indicated that he was unable to obtain a response from Mr. Wick to proposals to pursue the claim on behalf of the estate or to allow Mr. Roland to do so upon agreeable terms.

The Court inquired as to Mr. Wick's non-action in a letter dated July 27, 2011. In the letter the Court also directed Mr. Wick to set any application for compensation as trustee and any motion for approval of a final report for hearing before the Court. Mr. Wick responded by stating that the primary asset he was pursuing was the Jones Realty Litigation and indicated that

he had no recollection or record of a settlement offer. He noted, however, that "it is not impossible that an offer has come in" due to the "paper storm" the office experienced as a result of the November 2010 retirement of another panel trustee. On August 10, 2011, the Court entered an order authorizing abandonment of the Shareholder Derivative Litigation, provided that the bankruptcy estate receive 33.34% of any net recovery, after payment of costs and fees.

The United States Trustee ("UST") asked Mr. Wick about the status of the Shareholder Derivative Suit on May 18, 2012 and again on June 7, 2012. Mr. Wick did not respond to the UST's inquiries. The Shareholder Derivative Suit was set for trial on August 13, 2012 but was continued for further hearing.

Mr. Wick filed the Trustee's Final Report ("Final Report") and Application for Compensation on August 30, 2012. Mr. Wick also filed a Motion to Waive Notice and/or Hearing of Application for Compensation upon his request for $6,089.65 as compensation and $255.97 for reimbursement of out-of-pocket expenses. The Final Report referenced an unscheduled asset described as "cause of Action Stevenson" with an estimated net value of $0.00, abandoned pursuant to § 554(a). The related footnote states "Cause of action Stevenson Order entered abandoning 10K settlement." On August 31, 2012, the Court entered an Order that notice of hearing on the Application for Compensation shall be given and any objections must be filed within 21 days or the application would be approved by the Order becoming self-executing.

On September 4, 2012, the UST filed its Objection to Commission. The UST argues that, due to Mr. Wick's inaction regarding the Shareholder Derivative Suit and failure to respond to inquiries from the UST, Mr. Wick's case administration fell well below the

acceptable standard. Further, the UST contends that Mr. Wick's explanation of a "storm of paper" is patently false, as his case assignment did not increase significantly, if at all, as a result of the other panel member's retirement. For these reasons, the UST believes that Mr. Wick is not entitled to the commission set forth in § 326(a) and asks the Court to reduce Mr. Wick's commission by such amount as the Court deems just and proper. On October 3, 2012, a hearing on the Application for Compensation and the UST's Objection was held and the matter was continued for further hearing on November 7, 2012. On October 24, 2012, the UST filed its Objection to the Final Report arguing that approval of the Final Report as drafted will result in the abandonment of a potential asset of the estate.

        A hearing on the UST's objections was held on November 7, 2012. At the conclusion of the hearing, the parties were given until November 21, 2012 to file statements in connection with these matters and the matters were taken under advisement. The UST filed a Memorandum in Support of its Objections asking the Court to deny approval of the Final Report or, if the Final Report is approved, reduce Mr. Wick's commission. The UST notes that, at a minimum, the loss to the estate is the $10,000 settlement offer to which Mr. Wick failed to respond and accept on behalf of the estate.

        In a letter filed November 21, 2012, Mr. Wick contends that the estate's 33.34% interest in the outcome of the Shareholder Derivative Suit has not been abandoned under the terms of the Court's Order on August 10, 2011.[1] He also notes that he received $55,000 from the

---

[1] The language of the Order is as follows:

    Upon consideration of the motion of Harold Roland for an order authorizing the Trustee in this case to abandon certain lawsuit pending in Smyth County Virginia, captioned Roland v. Stevenson, and upon the objection filed by the Debtor, it appears

4

settlement of the Jones Realty Litigation on December 8, 2011 and filed his Final Report on January 17, 2012, in order to avoid bank charges or bond costs. Mr. Wick states that the UST demanded time sheets supporting his application for compensation, which resulted in a seven month delay until it was determined that time sheets did not have to be filed.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. Rulings upon a trustee's application for compensation to be paid from the estate and upon an objection to such trustee's final report of is administration of the case are "core" bankruptcy proceedings pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

### A. Trustee's Final Report

Section 704(a)(9) requires a chapter 7 trustee to "make a final report and file a final account of the administration of the estate with the court and with the United States

---

to the Court that the Movant is willing to share any net recovery with the bankruptcy estate, after payment of costs and fees, with the Movant to receive 66.66% of any such net recovery and the estate to receive 33.34% of any such net recovery. Therefore, it is ORDERED that Robert E. Wick, Jr., the Trustee, be, and hereby is, directed to abandon property of the estate consisting of certain lawsuit currently pending in the Circuit Court of Smyth County Virginia. The Movant shall make a report upon the conclusion of trial and provide a further report if the matter is successful and there is any recovery. And it is further ORDERED that entry of this order shall be deemed to constitute the abandonment of said property by the Trustee, subject to future net proceeds sharing as set forth above.

Case 09-70710    Doc 75    Filed 12/13/12    Entered 12/13/12 15:07:25    Desc Main
                              Document      Page 6 of 13

Trustee." 11 U.S.C. § 704(a)(9). After the filing of such report and certification by the trustee that the estate has been fully administered and if, within 30 days, no objection has been filed, the estate is presumed to be fully administered. Fed. Rule Bankr. Proc. 5009(a). Because Mr. Wick certified that the estate had been fully administered and because the UST's objection was not timely filed, the presumption of full administration applies. That presumption, however, is rebuttable. *See In re Beaton*, 211 B.R. 755, 763 (Bankr. N.D. Ala. 1997) (finding the fact that debtors failed to schedule all of their assets as sufficient evidence to rebut any presumption of full administration).

"Full administration" has not been conclusively defined. *See In re Wade*, 991 F.2d 402, 406 n.2 (7th Cir. 1993) (discussing various courts' interpretation of full administration). Case law suggests, however, that although a trustee may choose to abandon assets, known assets cannot be left "floating around in the air." *See In re Rosen*, 15 F. Supp. 516, 517 (S.D.N.Y. 1936). Therefore, it appears that a case has not been "fully administered" if the trustee knows of an asset and does not either abandon or administer it. In this case, it is not clear whether the estate's 33.34% interest in the outcome of the Shareholder Derivative Suit will be abandoned by approval of the Final Report. The description of the asset in the Final Report states that the cause of action and the $10,000 settlement offer made in relation to that cause of action were abandoned, but it fails to specifically mention the estate's 33.34% interest in the outcome of the Shareholder Derivative Suit. Further, the retained interest would not be abandoned pursuant to § 554(c), as it was not property scheduled under § 521(a)(1). *See* 11 U.S.C. § 554(c) ("[A]ny property scheduled under section 521(a)(1) of this title not otherwise

administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350.").

Because the estate's 33.34% interest in the outcome of the Shareholder Derivative Suit has not been reduced to cash or properly abandoned, the presumption of "full administration" arising under Bankruptcy Rule 5009(a) has been rebutted. Accordingly, the Court will sustain the U. S. Trustee's Objection to Final Report.

B.  Trustee's Commission

Prior to the enactment of the Bankruptcy Abuse and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), the tiered schedule set forth in 11 U.S.C. § 326[2] was consistently viewed as a limitation on chapter 7 trustee compensation. *See, e.g.*, *In re Miniscribe Corp.*, 309 F.3d 1234, 1241 (10th Cir. 2002) ("§ 326(a) sets the maximum compensation payable to the trustee, it does not establish a presumptive or minimum compensation."). Although it established an upper limit on chapter 7 trustee compensation, § 326 did not create an entitlement to the maximum allowable compensation. *See id.*; *In re Arnold*, 252 B.R. 778, 778 n.12 (9th Cir. BAP 2000) (stating that §326(a) establishes a

---

[2] Section 326(a) provides:

> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent of the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

compensation cap, not an entitlement). Instead, bankruptcy courts assessed the reasonableness of trustee compensation according to the factors set forth in § 330, as well as other relevant factors. *See, e.g.*, *In re Lan Associates XI, L.P.*, 192 F.3d 109 (3d Cir. 1999) (noting that courts use both § 330(a) and other factors to assess reasonableness). An analysis of these factors occasionally resulted in reduction of fees requested from the maximum allowable amounts set forth in § 326. *See, e.g.*, *In re Carr*, No. 05-73657 (Bankr. W.D. Va. Nov. 14, 2006) (applying pre-BAPCPA law).

Section 407 of BAPCPA amended § 330, adding § 330(a)(7), which provides: "[i]n determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a *commission*, based on section 326." § 330(a)(7) (emphasis added). Courts construing this paragraph disagree as to whether trustee compensation is still subject to a review for reasonableness. *See In re Salgado-Nava*, 473 B.R. 915 (listing post-BAPCPA cases that found trustee compensation subject to a review for reasonableness but concluding that fees determined by the statutory rate should be presumed reasonable absent extraordinary circumstances); *see also In re Eidson*, 481 B.R. 380, 384 (Bankr. E.D. Va. 2012) (adopting the court's reasoning in *Salgado-Nava* that Trustee's compensation is to be commission-based, absent extraordinary circumstances). Despite this difference of opinion, there does seem to be agreement that bankruptcy courts may review chapter 7 trustee fees when "extraordinary circumstances" are present. 473 B.R. at 921 ("[I]f extraordinary circumstances exist, . . . the bankruptcy court may be called upon in those cases to determine whether there exists a rational relationship between the amount of the commission and the type and level of services rendered.").

Case law provides little guidance as to what constitutes "extraordinary circumstances." *See* 473 B.R. at 922, n.16 (noting the unresolved issue of what facts might qualify as extraordinary for purposes of activating the bankruptcy court's duty to determine the reasonableness of the § 326(a) commission rates).[3] The UST website advises that, in regards to trustee compensation, "[e]xtraordinary factors are expected to arise only in rare and unusual circumstances and include situations such as where the trustee's case administration falls below acceptable standards." *Frequently Asked Questions (FAQs) for Trustees*, http://www.justice.gov/ust/eo/bapcpa/trustees_faqs.htm (last updated Aug. 2006).

Among the duties of a chapter 7 trustee is the duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as compatible with the best interests of the parties in interest."  § 704(a)(1).  In this case, Mr. Wick took no action with respect to the Shareholder Derivative Suit.  He did not pursue the claim and he failed to respond to the settlement offer,[4] Mr. Roland's Motion to Compel Abandonment, and repeated inquiries from the UST regarding the status of the litigation. Further, he filed his Final Report without determining the status of the Shareholder Derivative Suit or making any clear analysis or provision in such report as to the effect of the Court's approval of same upon the estate's 33.34% interest in any net recovery from that claim.  Mr.

---

[3] The United States Bankruptcy Court for the Eastern District of Virginia recently allowed a reduced fee for a chapter 7 trustee due to a failure to properly and timely complete his duties as trustee.  *See In re Rowe*, 2012 WL 4857043 (Bankr. E.D. Va. 2012) (granting a stay pending appeal to the district court).  The trustee received the last receipt on June 13, 2011 but did not file a final report until June 25, 2012 and counsel for the trustee was unable to explain the delay in the administration of the case at the hearing.  *Id.*

[4] Indeed it appears that he failed even to review the pleading in which such offer was mentioned.

Wick initially attributed his failure to respond or to administer the asset to a "paper storm" in his office caused by the November 2010 retirement of another panel trustee, but he failed to dispute or otherwise respond to the United States Trustee's assertion that Wick's caseload did not increase significantly in 2010 and decreased in 2011.  In summary, Mr. Wick did not provide any evidence to substantiate his claim of an increased workload, nor did he provide any other justification for his repeated failure to abandon or administer the asset.  Indeed, it appears that the Trustee was only interested in the Jones Realty Litigation and considered Mr. Roland's shareholder derivative suit something of a nuisance.  The fact that the bankruptcy estate retained any residual interest in the derivative suit was entirely due to the Court's action in ruling upon Mr. Roland's motion, in which the Trustee demonstrated no interest and gave no attention.  Similarly, Mr. Wick settled the Jones Realty Litigation without filing a motion to obtain court approval pursuant to Rule 9019 and failed to follow the Court's express written directive to set his own application for compensation for hearing rather than request waiver of such a hearing.  Based on these facts, Mr. Wick's case administration fell well below acceptable standards and constitutes an extraordinary circumstance that overcomes the presumption of reasonableness of the statutory commission rate.

       Although under the facts presented here the Court has concluded without difficulty that the Trustee is not entitled to payment of the full commission ordinarily awarded based on estate receipts and distribution, the determination of how much, if any, the creditors have been damaged as a result of the deficiencies already noted in this decision is not nearly so plain.  Nearly all of the money received during the estate administration is the result of the settlement of the Jones Realty Litigation.  That settlement was in the amount of $55,000 for a

claim scheduled at a value of $155,000.  Because that settlement was never directly noticed to creditors or presented to the Court by means of a motion to approve such settlement, the Court has no meaningful basis now to judge its merit.  While settlements in such matters handled by independent attorneys employed by the Trustee and approved by the Court are generally approved, such approval is not inevitable even if no objection to it is filed.  The Court doubts, but is unable to be confident, that any prejudice was suffered by the estate as a result of the Trustee's failure to observe normal procedures.  As the Trustee has noted, the fee approved by the Court to the law firm representing the Trustee in this litigation was approved without any objection being filed by the U. S. Trustee or any creditor.  The Court does reject, however, the Trustee's contention that approval of the law firm's compensation amounted to approval of the settlement, albeit such does appear at this late date to be the practical consequence of such chain of events.  There certainly is no showing that such settlement was anything other than something "which fell into the Trustee's lap" rather than being the tangible result of the Trustee's vigorous administration of the case.  The Jones Realty Litigation was already pending at the time the bankruptcy case was filed and counsel was already representing the Debtor in its prosecution. The Trustee did file an application for the continued employment of counsel to handle the litigation on the estate's behalf and while this was clearly a good and appropriate thing for the Trustee to do, it was of a purely routine nature once the basic decision was made whether to continue the employment of existing counsel or seek approval for employment of new counsel. The Trustee obviously conferred with counsel with respect to the handling of the lawsuit because he authorized counsel to settle the claim for the agreed amount.

The implications of the Trustee's handling of the Shareholder Derivative Suit are even murkier. Absent the persistence of Mr. Roland, it is apparent that such litigation would have died during the administration of this case as a result of the Trustee's disinterest and lack of attention to it. The U. S. Trustee has suggested that at a minimum the bankruptcy estate was damaged by the Trustee's failure to respond to the $10,000 settlement offer. That is certainly one possibility, but at this point that litigation remains unresolved and what amount the estate might ultimately receive from its continuing financial interest in its outcome is unknown. It may be nothing or more or less than the $10,000 settlement offer extended by the Debtor's principal owner and officer. This uncertainty is also suggested by the fact that the U. S. Trustee has not requested the Court to deny all compensation to the Trustee but to reduce the commission and award him "such amount as this Court may deem just and proper." The Court concludes that a substantial reduction of the commission-based compensation to which the Trustee normally would be entitled is warranted under the facts of this case. Therefore, the Court will reduce such compensation by slightly more than half, from $6,089.65 to $3,000, but will approve full reimbursement of his out-of-pocket expenses in the amount of $255.97.

By a separate order entered contemporaneously herewith the Court will sustain both Objections filed by the U. S. Trustee and will allow compensation to the Trustee, subject to his proper completion of his duties in this case, in the amount of $3,000 plus reimbursement of expenses of $255.97. In the event he fails to do so, only his expenses will be reimbursed and all compensation will be denied.

This 13th day of December, 2012.

/s/ William F. Stone, Jr.
_____
UNITED STATES BANKRUPTCY JUDGE