**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| S&R CONSTRUCTION CO., INC. | ) | CASE NO. 09-70710 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM DECISION

This case is before the Court upon the Motion for Clarification of Mr. Harold Roland, Jr., an interested party, for entry of an order clarifying the Court's August 10, 2011 Order (the "Motion"). The Court will enter a clarifying order in accordance with the provisions of this Memorandum Decision.

FINDINGS OF FACT

S&R Construction Co., Inc. ("S&R") initiated this Chapter 7 filing on March 25, 2009. Mr. Larry Stevenson signed the petition in his capacity as president of the corporation. In response to Question 4 on the Statement of Financial Affairs, S&R listed three pending lawsuits at the time the petition was filed: Debtor v. Jones Realty; Roland v. Debtor, et al.; and Center Capital Corporation v. Debtor. The first of these (the "Jones Realty claim") was a claim in contract against a customer of S&R involving a construction job and was listed on Schedule B at a value of $155,000. The second was a shareholder derivative suit (the "derivative suit") instituted by Mr. Harold Roland, a minority shareholder of S&R, on behalf of the corporation against Mr. Stevenson (later amended to include Mrs. Stevenson).[1] This suit was not listed on

---

[1] It is this Court's understanding that Mr. Roland and Mr. Stevenson (or perhaps Mr. and Mrs. Stevenson) are S&R's only shareholders, but the filings with the Court do not appear to

Schedule B. The third suit was a creditor action against the Debtor.

S&R's debts to creditors were listed on Schedules D, E, and F. Schedule D revealed debts totaling $199,026 of which $32,226 was unsecured. Schedule E showed priority unsecured tax debts totaling $113,086.94 owed to the Commonwealth of Virginia, the Internal Revenue Service and the Smyth County Treasurer. Schedule F reflected total general unsecured debt of $80,969.46. On March 27, 2009 Mr. Robert Wick was appointed as the Chapter 7 Trustee in the case.

On the same date of the bankruptcy filing, Mr. Roland filed a Motion for a Rule 2004 examination, to which S&R objected. Mr. Roland wanted to continue discovery regarding the derivative suit he had brought in the Circuit Court of Smyth County against S&R and Mr. Stevenson on November 30, 2005. After taking the matter under advisement, the Court preliminarily denied the motion in a Memorandum Decision entered on April 13, 2009. The motion was ultimately granted on June 5, 2009.

On February 9, 2010 the Chapter 7 Trustee filed an application to employ John H. Tate, Jr., Esq. for the purpose of representing the Trustee's interest in the Jones Realty claim pending in the Circuit Court of Smyth County. Mr. Tate was already representing S&R in this litigation prior to the bankruptcy filing. The application was granted by order entered February 25, 2010.

On June 2, 2011, somewhat more than two years after S&R's bankruptcy filing, Mr. Roland filed in the Bankruptcy Court a Motion to Compel Abandonment (the "abandonment motion") of the derivative suit he had instituted prior to the bankruptcy filing. In that motion he

---

establish the corporation's ownership definitively.

alleged that he had made numerous requests of the Trustee to abandon the asset and that the suit had been administratively dismissed by the Circuit Court due to inaction.[2] S&R, on behalf of Mr. Stevenson, objected to the abandonment and stated that Mr. Stevenson had offered to settle the claim in full for $10,000 and that the Trustee needed more time to review the offer. The Trustee failed to respond to the abandonment motion or appear at the hearing on July 20, 2011 and this Court took the matter under advisement. On July 26, 2011 counsel for Mr. Roland filed a letter proposing that all costs, expenses, and attorney fees be paid first out of any recovery in the derivative suit, with the remainder to be split 30% to the Trustee and 70% to Mr. Roland. The next day the Court sent a letter to the Trustee inquiring about the $10,000 settlement offer. In a reply letter dated August 6, 2011 the Trustee stated he was unable to remember an offer of $10,000 and that his primary concern was the litigation of the Jones Realty claim currently being handled by Mr. Tate.[3]

On August 10, 2011 this Court entered an Order drafted by counsel for Mr. Roland (the "August 10 Order") granting the abandonment motion. The Trustee was ordered to abandon the derivative suit with any recovery from it, after attorney's fees and costs, to be split 66.66% to Mr. Roland and 33.34% to the estate.[4] The Court determined that this division of

---

[2] Mr. Roland's abandonment motion also stated, "The Movant believes that the fact that the Trustee has not prosecuted the matter is an indication that the Trustee does not believe that it has much value to the bankruptcy estate."

[3] The terms of the settlement regarding the Jones Realty litigation were disclosed in the application for approval of Mr. Tate's fees and expenses filed November 8, 2011. In the application the Trustee set forth that the parties had reached a settlement agreement in the amount of $55,000 to be paid to the Trustee for the benefit of the estate. This settlement was never brought before this Court directly for approval.

[4] The August 10 Order set out:
   Upon consideration of the motion of Harold Roland for an order

3

proceeds was appropriate due to the fact that Mr. Roland, who obviously believed strongly in the merits of the suit, was willing to bear personally the expense and risk of litigation which the Trustee had demonstrated no interest in pursuing on behalf of the bankruptcy estate of S&R. Clarification of this Order is now at issue before the Court.

On August 30, 2012 the Trustee filed his Application for Compensation and his Final Report which set forth gross receipts of $56,793.40 (largely comprised of the $55,000 received from the Jones Realty claim settlement). Per the Report the total amount of allowed unsecured claims is $338,071.74, of which $240,670.89 is attributable to priority claims, the majority being owed to the Internal Revenue Service for FICA taxes and penalties.[5] According to the Report, after proposed payment of chapter 7 administrative expenses totaling $20,232.14,

---

authorizing the Trustee in this case to abandon certain lawsuit pending in Smyth County Virginia, captioned Roland V. Stevenson, and upon the objection filed by the Debtor, it appears to the Court that the Movant is willing to share any net recovery with the bankruptcy estate, after payment of costs and fees, with the Movant to receive 66.66% of any such net recovery and the estate to receive 33.34% of any such net recovery. Therefore, it is ORDERED that Robert E. Wick, Jr., the Trustee, be, and hereby is, directed to abandon property of the estate consisting of certain lawsuit currently pending in the Circuit Court of Smyth County Virginia. The Movant shall make a report upon the conclusion of trial and provide a further report if the matter is successful and there is any recovery. And it is further ORDERED that entry of this order shall be deemed to constitute the abandonment of said property by the Trustee, subject to future net proceeds sharing as set forth above.

[5] The Internal Revenue Service filed a third amended proof of claim on September 11, 2009 in the total amount of $269,020.25, of which $227,768.32 is entitled to priority. The proof of claim included an attachment showing priority claims for "WT-FICA," "CIVIL PEN," "HVY VEHICL," "CORP-INC," and "FUTA."

4

$36,459.30 was available for payment to priority unsecured creditors.[6] This distribution does not allow for any payment to general unsecured creditors. In the Asset section of the Report the Trustee notes that the shareholder derivative suit valued at $0 was "OA." The key at the top of the page indicates that this means the property was abandoned pursuant to 11 U.S.C. § 554(a). On Page 2 of the Report there is a note stating "Cause of action Stevenson Order entered abandoning 10K settlement." The United States Trustee objected to the Trustee's Application for Compensation on September 4, 2012 and objected to the Trustee's Final Report on October 24, 2012. This Court held a hearing on November 7, 2012 and took the matter under advisement. Its Memorandum Decision entered on December 13, 2012 sustained the objection to the Final Report, stating, "the estate's 33.34% interest in the outcome of the Shareholder Derivative Suit has not been reduced to cash or properly abandoned[.]"

Before the Memorandum Decision was issued Mr. Roland filed the Motion seeking clarification of the Court's August 10 Order. Mr. Roland states that pursuant to the Court's Order he moved to amend his pleadings "to realign the parties so that the [sic] Roland could act not only derivatively, but directly in order to make a recovery in accordance with his agreement with the chapter 7 trustee." According to the Motion, counsel for Mr. and Mrs. Stevenson objected to the amendment, arguing that the August 10 Order was insufficient to grant Mr. Roland the right to proceed on behalf of the corporation. On December 18, 2012 counsel for Mr. and Mrs. Stevenson responded to the Motion asserting that this Court determined in its

---

[6] Per the Court's Memorandum Decision and Order entered November 21, 2012, the Trustee's compensation was reduced from the requested $6,089.65 to $3,000. This would reduce the amount of administrative expenses by $3,089.65 meaning that the amount available for distribution would be $39,548.95.

5

Memorandum Decision regarding Trustee compensation that the cause of action had not been abandoned and remained an asset of the estate.  Per a telephone conference held on January 30, 2013, the parties were to submit written authority by February 12, 2013 with any responses due one week after.  On February 11, 2013 Mr. and Mrs. Stevenson filed their brief and on February 12, 2013 Mr. Roland filed his brief.  As both parties waived the filing of responsive briefs, the matter is now ready for decision.

CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia.  The Court further concludes that the interpretation of this Court's previous order regarding what remains property of the bankruptcy estate and what has been abandoned is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O) because it involves the determination of the estate's interest in the outcome of litigation, which is clearly a matter involving the administration of the bankruptcy estate, and is a proceeding "affecting the liquidation of the assets of the estate[.]"

A preliminary issue raised is whether this Court has authority to interpret its previous orders.  To this point Mr. Roland's brief cites to two decisions.  The first, *In re Arns*,[7] held that, "the bankruptcy court may fashion relief for the creditor, including reexamining and revising an order that was entered during the pendency of bankruptcy case."  The court relied

---

[7] 372 B.R. 876, 883-84 (Bankr. N.D. Ill. 2007).

upon the language of 11 U.S.C. § 105(a) as authority for its holding:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

In the second decision the Bankruptcy Court for the District of New Jersey concluded, "At the outset, the Court acknowledges it has independent, discretionary authority to review, amend, correct, or clarify its own Opinion and other orders under its inherent equitable power." *In re G-I Holdings, Inc.*, 472 B.R. 263, 279 (Bankr. D.N.J. 2012). More definitively, however, the United States Supreme Court also has addressed this issue in *Travelers Indem. Co. v. Bailey*,[8] where it set out:

> [T]he only question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the Clarifying Order. The answer here is easy: as the Second Circuit recognized, and respondents do not dispute, the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.

That decision was cited and followed by the Bankruptcy Court for the Eastern District of Virginia in *In re Jones*, 2011 Bankr. LEXIS 4083 (Bankr. E.D. Va. Oct. 21, 2011). Counsel for the Stevensons has not disputed the Court's authority to interpret and clarify its own orders. Accordingly, the Court's authority to amend its own orders to the extent necessary or appropriate to clarify and, if necessary, enforce them is clear.

Counsel for the Stevensons argues that only the Trustee has standing to assert a derivative cause of action. He cites two cases for this proposition in his response brief to the

---

[8] 557 U.S. 137, 151 (2009).

7

Motion. The first, *Magana-Lopez v. JP Morgan Chase Bank, (In re Magana-Lopez)*,[9] concerns the debtors' standing to prosecute an adversary proceeding to overturn a foreclosure. The court determined that a cause of action that accrued pre-petition was property of the estate and discussed the affirmative obligation of a debtor to list all property interests in the bankruptcy petition.[10] The decision goes on to state that, "[u]nder § 554(d), property that is unadministered by the trustee remains property of the estate." *Id.* at 7. Because the suit at issue in *Magana-Lopez* was not listed in the schedules and not administered through the estate, only the trustee had the right to prosecute the action. The facts presented there are distinguishable from those presented here in that the property at issue in this case, the right to bring a derivative suit, was affirmatively abandoned to Mr. Roland. There was no such abandonment in *Magana-Lopez*, which involved a straight forward application of § 554(d).

The second case cited by counsel for the Stevensons is *Fernandez v. Garcia, et al. (In re Fernandez)*, Case No. 11-18046, Adv. Proc. No. 11-1011 (Bankr. S.D. Tex. Apr. 24, 2012). The pre-fabricated building and other partnership assets in question in *Fernandez* were not scheduled. One day prior to discharge the debtors brought an adversary proceeding to recover the unscheduled property. Subsequent to the initiation of the adversary proceeding but prior to its conclusion the trustee abandoned all scheduled assets. Because no specific order was entered regarding the unscheduled property, it remained property of the estate. The court specifically set out, "The Court's dismissal is without prejudice to the Trustee's ability to assert

---

[9] Case No. 10-50387-SC, Adv. Proc. No. 11-01170-SC (Bankr. C.D. Cal. Apr. 18, 2012).

[10] It is worth noting that while the schedules did not disclose the shareholder derivative suit, it was Mr. Stevenson that signed the petition on behalf of S&R.

the claims. If the Trustee abandons the claims, the dismissal will not prevent Mr. Fernandez from raising the claims in a court of competent jurisdiction." *Id*. at 6. The critical factual distinction between *Fernandez* and the instant case is that in *Fernandez* the assets in question were never specifically addressed. The trustee's blanket abandonment of scheduled assets did not encompass the property at issue because it was not properly scheduled. Here, the right to bring the derivative suit was expressly abandoned by the August 10 Order. Another important practical distinction between both of the cases cited by counsel for the Stevensons and this case is that here the property in question, the derivative suit, even though not listed in Schedule B, was plainly disclosed in the Debtor's Statement of Financial Affairs filed with the schedules.

Counsel for the Stevensons goes on to argue that Mr. Roland's standing should be determined by the state court under Virginia law. He states that "a shareholder does not have standing to sue for wrongs that have been done to a corporation"[11] and "that an individual shareholder has no right to sue in his own right and interest for derivative claims that should accrue for the benefit of the corporation."[12] He also maintains that in order for Mr. Roland to bring a derivative action, he must show that he "fairly and adequately represents the interest of the corporation in enforcing the right of the corporation." *See* Va. Code Ann. § 13.1-672.1(A)(4).[13] He argues that this determination should be made by the Circuit Court.

The Fourth Circuit Court of Appeals, in a case applying South Carolina law,

---

[11] *See Keepe v. Shell Oil Co.*, 220 Va. 587 (1979).

[12] *See Simmons v. Mellon*, 261 Va. 561 (2001).

[13] In the context of the facts presented in this dispute, this argument seems more artful than very pertinent in that it is quite clear that the Stevensons' interest is not in finding some shareholder other than Mr. Roland to act on behalf of the corporation, but to defeat the derivative suit entirely.

found that a stockholder derivative action under applicable state law is an asset of the debtor corporation's bankruptcy estate.

> A trustee in bankruptcy succeeds to all rights of the debtor, including the right to assert any causes of action belonging to the debtor. *See Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999). A debtor's right to bring a legal claim is part of the bankruptcy estate under 11 U.S.C. § 541(a). Applying that foundational principle to the case at bar, the Trustee has the authority to assert any cause of action that Bancshares could have brought in its own right. Absent statutory modification, this power includes the right to assert derivative claims of Bancshares (as the Bank's sole shareholder) against the Directors in their capacity as officers and directors of the Bank.

*Vieira v. Anderson (In re Beach First Nat'l Bancshares)*, 702 F.3d 772, 776-77 (4th Cir. S.C. 2012). *Bancshares* cites to an earlier Fourth Circuit decision that stated:

> It is well settled . . . that causes of action for losses sustained because of the mismanagement and negligence of directors, officers, and employees of a bank belong to the bank itself . . . and in the event of its liquidation, such causes of action are vested in its receiver; and may be conveyed and sold as any other asset [citations omitted].

*Bauer v. Sweeny*, 964 F.2d 305, 306-07 (4th Cir. S.C. 1992). Va. Code Ann. § 13.1-603 states that a "'Derivative proceeding' means a civil suit in the right of a domestic corporation . . . ." In a derivative proceeding a shareholder brings an action on behalf of a corporation. Any recovery goes to the corporation if the litigant is successful. Reading these cases and the statute together it can be concluded that a Virginia corporation owns the rights to assert causes of action, a trustee succeeds to those rights when a corporation files bankruptcy, the rights become assets of the estate, and the trustee can then sell (or abandon) those assets when administering the estate.

When a trustee succeeds to the rights of a corporation through bankruptcy, the trustee must administer the assets of the corporation. The trustee may abandon assets

affirmatively or they may be abandoned through operation of law. 11 U.S.C. § 554 provides the ways in which property can be abandoned. The text of the statute sets forth:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
>
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

Therefore property can be abandoned (1) on request of the trustee, (2) on request of a party in interest, (3) if the property is scheduled and not otherwise administered at the time the case is closed, or (4) by order of the court.

Recently the Bankruptcy Appellate Panel for the Sixth Circuit took up the issue of the fourth method in *In re DeGroot*, 484 B.R. 311 (B.A.P. 6th Cir. 2012). The court acknowledged that property that is not scheduled and not administered could be abandoned by order of the bankruptcy court. This reading is bolstered by *DeVore v. Marshack (In re DeVore)*,[14] which set out "[n]otwithstanding the general rule, the prefatory language of § 554(c), 'unless the court orders otherwise,' indicates that courts have discretion to affect or prevent technical abandonment simply by ordering otherwise." It would stand to reason that the same

---

[14] 223 B.R. 193, 198 (B.A.P. 9 th Cir. Cal. 1998).

language in § 554(d) would allow a court to order the abandonment of property that was not scheduled and not administered.  The court in *DeGroot* found that although the debtor did not list the asset in the schedules, he did disclose it at the section 341 meeting of creditors and because the trustee knew about the asset but failed to properly administer it, the bankruptcy court had the authority to "order otherwise" and abandon the asset.  *Id.* at 321-22.  Further, the court concluded that the bankruptcy court correctly abandoned the asset *to* the debtor's ex-wife.

> [T]he bankruptcy court reasoned that the only person who seemed to have suffered as a result of the failure of Debtor and the Trustee to comply with their statutory duties was Joy DeGroot.  Therefore, the bankruptcy court concluded that although the Receivable technically remained property of the estate under § 554(d), appropriate circumstances existed to 'order otherwise' and deem the Receivable abandoned to Joy DeGroot.

*Id.* at 322.  These circumstances included prevention of a "miscarriage of justice and to mitigate unfair consequences of § 554(c) and (d)'s default rules." *Id.*

## DECISION

The Court's intent in the August 10 Order was to abandon the derivative suit to Mr. Roland, which in this context means to assign or transfer to him the Trustee's right to prosecute the derivative suit.  The terms of that abandonment, in the face of the Trustee's inaction, contemplated a division of any proceeds obtained from the derivative suit in a manner designed to provide sufficient financial incentive to Mr. Roland to continue to prosecute the litigation claim against the Stevensons, without any cost to the estate, while still preserving for the benefit of S&R's creditors a share of any recovery ultimately obtained.  Had the asset not been abandoned to Mr. Roland, it appears probable that the corporation's creditors would have

been denied any recovery at all from the asset.[15]

An Order was entered specifically abandoning the right to prosecute the derivative suit to Mr. Roland, reserving only a portion of the potential proceeds for the estate. The derivative suit was not technically scheduled, even though its existence was disclosed from the outset in the Statement of Financial Affairs, and was not properly administered. Accordingly, it remained property of the estate under § 554(d) "unless the court orders otherwise." Here this Court did order otherwise in the August 10 Order. Pursuant to that Order, the right to a contingent interest of 33.34% in the potential proceeds (after costs and attorney's fees) remains property of the estate under § 554(d) as it was not scheduled or abandoned and it was not administered. While the abandonment motion may have been brought under § 554(b) on the basis that the derivative suit was of inconsequential value to the estate as a result of the Trustee's unwillingness to pursue it, this Court declined to approve such an abandonment and ended up granting the motion pursuant to § 554(d) on terms intended to preserve value for the benefit of S&R's creditors.

---

[15] This Court takes judicial notice of the online records of the State Corporation Commission of Virginia which indicate that the corporate existence of S&R has terminated. The Court further notes that a corporation does not obtain a discharge in a Chapter 7 bankruptcy case. Accordingly, the interests of the unpaid creditors of S&R are in every meaningful way the interests of the corporation itself.

An Order in accordance with this Memorandum Decision will be entered contemporaneously herewith.

Decided this 13th day of March, 2013.

_____
UNITED STATES BANKRUPTCY JUDGE